STATE EX REL. GENERAL GRAIN, INC. *v.* BOONE CIRCUIT COURT, GROOVER, SPECIAL JUDGE.

[No. 30,291. Filed February 11, 1964.]

*William H. Krieg, John S. Grimes, Donald A. Schabel, Krieg, DeVault, Alexander & Capehart,* of counsel, *Buschman, Carr, Schabel & Tabbert,* of counsel, all of Indianapolis, *Russell I. Richardson,* and *Stewart & Richardson,* of counsel, of Lebanon, for relator.

*Richard J. Groover, pro se.*

*Merle H. Miller, Donald Elliott,* and *Ross, McCord, Ice & Miller,* of counsel, all of Indianapolis, for respondents.

JACKSON, J.—This is an original action seeking a Writ of Prohibition commanding and directing the respondents to refrain, until the further order of this Court, from proceeding further or exercising jurisdiction in connection with the order of respondent court dated July 18, 1962, requiring the relator to deposit the sum of $331,230.88 with the clerk of the respondent court in the cause of *John H. Beals et al.* v. *General Grain, Inc.,* being cause No. 22022 on the records of said court. We issued the temporary writ.

The following is a summary of the factual situation preceding the institution of this original action as appears from relator's petition.

On July 9, 1958, the shareholders of Acme-Goodrich, Inc., at a meeting called for that purpose, adopted an agreement of merger whereby Acme-Goodrich, Inc., The Cleveland Grain Company, Inc., and Associated Terminal Elevators of Indiana, Inc., were to be merged into the relator General Grain, Inc., pursuant to the provisions of The Indiana General Corporation Act, under which all of said corporations were incorporated.

Within thirty (30) days after the adoption of the merger agreement by the shareholders of Acme-Goodrich, Inc., 104 preferred shareholders of Acme-Goodrich, Inc., filed with said corporation their written objections to the merger and demands for the payment of the value of their shares pursuant to the provisions of Section 37 of the Indiana General Corporation Act. None of said 104 shareholders had voted his shares in favor of the merger at the meeting on July 9, 1958.

The agreement of merger was approved and adopted by the other parties thereto. Thereafter, on August 12, 1958, Articles of Merger of Acme-Goodrich, Inc., The Cleveland Grain Company, Inc., and Associated Terminal Elevators of Indiana, Inc., into the relator General Grain, Inc., were filed with and approved by the Secretary of State of Indiana, thereby affecting the merger of the said corporations pursuant to their agreement.

The 104 dissenting shareholders of Acme-Goodrich, Inc., and the relator did not within thirty (30) days after August 12, 1958, the effective date of the merger, agree on the value of the dissenting stockholders' shares. Thereafter, on November 10, 1958, being the 90th day after the effective date of the merger, the 104 dissenting preferred shareholders each filed a separate action in the Superior Court of Marion County for the

value of their shares. All of these actions were consolidated under cause No. C-38097, being the action entitled *"John H. Beals, Plaintiff* v. *General Grain, Inc., and Acme-Goodrich, Inc., Defendants"* in Room No. 2 of said court. All of the complaints were identical except for allegations as to the number of shares owned.

The complaints filed by the dissenting shareholders were in two paragraphs, the first of which was later dismissed, and is therefore, not in issue or considered. The second paragraph of complaint sought to have the court appraise the value of their stock pursuant to the provisions of Section 37 of The Indiana General Corporation Act. On December 23, 1959, the court appointed three appraisers to appraise the value of the plaintiffs' share of preferred stock in Acme-Goodrich, Inc.

On April 8, 1960, the appraisers fixed the value of the shares as of August 12, 1958, as follows: The 5% Series A preferred stock of Acme-Goodrich, Inc., of the par value of $100.00 per share was appraised as being of the value of $66.25 per share; the 4% Series B preferred stock of Acme-Goodrich, Inc., of the par value of $24.00 per share was appraised as being of the value of $13.00 per share.

Within ten days after the filing of the appraisal report, on April 12, 1960, plaintiffs filed written exceptions to the report of the appraisers. On April 18, 1960, relator General Grain, Inc., also within the ten days of the filing of the report of the appraisers, filed its written exceptions to the report.

Thereafter, on April 22, 1960, relator filed a motion for change of venue from the county, the motion being sustained, said cause was venued to respondent Boone Circuit Court where it was docketed as cause No. 22022.

On February 16, 1961, relator General Grain, Inc., filed a motion for a change of venue from the judge, motion was granted, and on March 6, 1961, the respondent Richard J. Groover was appointed as Special Judge, qualifying and assuming jurisdiction in the cause on March 10, 1961.

On April 2, 1962, plaintiffs below, John H. Beals et al., filed their petition in respondent court for an order directing the immediate payment by the relator General Grain, Inc., to the clerk of respondent court of the sum of $331,230.88, that sum being the principal amount, without interest, of the value of plaintiffs' stock in Acme-Goodrich, Inc., as fixed by the appraisers. The cause having theretofore been set for trial by jury on the issues raised by the exceptions to the appraisers' report, the petition was taken under advisement by respondent court.

Thereafter, the cause was tried by jury and on July 6, 1962, the jury rendered its verdict finding that the value of 5% Series A preferred stock of Acme-Goodrich, Inc., on August 12, 1958, was $85.00 per share, that the value of the 4% Series B preferred stock of Acme-Goodrich, Inc., on August 12, 1958, was $20.40 per share, and each of the plaintiffs listed in the verdict was entitled to recover from General Grain, Inc., a sum equal to the value of the Series A preferred stock of Acme-Goodrich, Inc., times the number of shares of such stock set opposite his name plus the value of the Series B preferred stock of Acme-Goodrich, Inc., times the number of shares of such stock set opposite his name plus interest thereon at the rate of 6% per annum from August 12, 1958. On July 18, 1962, the respondent court entered judgment on the verdict in favor of the 104 plaintiffs against the relator General Grain, Inc., in the aggregate sum of $585,180.19. On

the rendition of the judgment as aforesaid, and on the same day, relator filed a motion for a stay of execution on the judgment for a period of sixty days on the ground that under Section 37 of The Indiana General Corporation Act, the obligation of the relator to pay such judgment does not mature until the expiration of such sixty day period. The motion was granted by the court.

At the time of the entry of the judgment of July 18, 1962, the respondent court entered an order granting the plaintiffs' petition of April 2, 1962, to require the deposit in the clerk's office of the respondent court the value of plaintiffs' stock as assessed by the appraisers on April 8, 1960, and ordered relator to deposit the sum of $331,230.88 with such clerk within twenty days. On the same day, July 18, 1962, relator filed its written motion to vacate said order on the ground that the respondent court had no statutory or inherent authority to enter such order and is without jurisdiction to enforce the same, which motion was denied by the court.

The rights of the parties are to be determined by the provisions of Acts 1929, ch. 215, §37, p. 725, being §25-236, Burns' 1960 Replacement which reads as follows:

"If any shareholder of any corporation a party to a merger or consolidation who did not vote in favor of such merger or consolidation at the meeting at which the agreement of merger or consolidation was adopted by the shareholders of such corporation, shall, at any time within thirty [30] days after such adoption of the agreement of merger or consolidation by such shareholders, object thereto in writing and demand payment of the value of shares, the surviving or new corporation shall, in the event that the merger or consolidation shall be made effective, pay to such shareholder, upon surrender of his certificates therefor, the value of

such shares at the effective date of the merger or consolidation. If within thirty [30] days after such effective date the value of such shares is agreed upon between the shareholder and the surviving or new corporation, as the case may be, payment therefor shall be made within ninety [90] days after the effective date. If, within thirty [30] days after such effective date, the surviving or new corporation, as the case may be, and the shareholder do not so agree, either such corporation or the shareholder may, within ninety [90] days after such effective date, petition the public service commission of this state, if the corporation be a public utility, or the circuit or superior court of the county in which the principal office of the corporation is located, if the corporation be not a public utility, to appraise the value of such shares; and payment of the appraised value thereof shall be made within sixty [60] days after the entry of the judgment or order finding such appraised value. The practice, procedure and judgment in the circuit or superior court upon such petition shall be the same, so far as practicable, as that under the eminent domain laws in this state; and the practice, procedure and order before the public service commission upon such petition shall be as prescribed by law and the rules of the commission.

"Upon the effective date of the merger or consolidation any shareholder who has made such objection and demand shall cease to be a shareholder and shall have no rights with respect to such shares except the right to receive payment therefor. Every shareholder who did not vote in favor of such merger or consolidation and who does not object in writing and demand payment of the value of his shares at the time and in the manner aforesaid, shall be conclusively presumed to have assented to such merger or consolidation." See also Acts 1905, ch. 58, *et seq.*, being §3-1701, Burns' 1946 Replacement, *et seq.*

The record discloses that no agreement as to the value of the shares of the dissenting stockholders and the surviving corporation was reached within thirty

days from the effective date of the merger on August 12, 1958, and therefore such stockholders within the ninety day period provided by the statute (§25-236, *supra*) sought to and did have the value of said stocks determined by appraisers appointed by the court, pursuant to the statute. Thereafter, on April 3, 1962, plaintiffs filed a "Petition For Deposit Of Assessed Damages", reading in pertinent part as follows:

"1. Pursuant to Section 3-1706, Burns Ind. Stat. Ann., the Court-appointed appraisers in this action, filed on April 8, 1960, their appraisal report of the value of the plaintiffs' shares of preferred stock of Acme-Goodrich, Inc., assessing the total value of all such shares in the sum of $331,230.88.

"2. As of August 12, 1958, the date of the merger of Acme-Goodrich, Inc., into General Grain, Inc., the plaintiffs herein ceased to be shareholders of Acme-Goodrich, Inc., and had no right with respect to their former shares of Acme-Goodrich, Inc., except the right to receive payment therefor, and accordingly since such date the plaintiffs herein have not received any dividends or any other benefit from such shares or the property or funds representing the value of such shares.

"3. As of August 12, 1958, the defendant, General Grain, Inc., the surviving corporation in the aforesaid merger acquired all right, title and interest in and to the plaintiffs' shares of Acme-Goodrich, Inc., preferred stock, subject only to the obligation of paying the value thereof, and acquired all the properties and funds of Acme-Goodrich, Inc., and since such date has had the full unrestricted benefit thereof.

"4. Section 37 of the Indiana General Corporation Act requires that the practice, procedure and judgment in this action be the same, so far as practicable, as that under the eminent domain laws of this state, and Section 7 of the Eminent Domain Law (Section 3-1708, Burns', Ind. Stat. Ann.) requires the condemnor to pay to the clerk of the court the amount of damages assessed in order law-

fully to take possession of the appropriated property.

"5. Section 11 of the Eminent Domain Law (Section 3-1711, Burns' Ind. Stat. Ann.) provides that any person whose land has been taken for any public use can proceed to have his damages assessed under this act substantially in the manner provided in the Eminent Domain Law.

"6. The defendant, General Grain, Inc., has already taken possession of and presently holds plaintiffs' stock and all the property and funds formerly belonging to Acme-Goodrich, Inc., out of which the obligations to pay for the stock are to be satisfied, and should, therefore, promptly pay to the clerk of this court the total amount of $331,230.88, being the principal amount without interest assessed by the court-appointed appraisers.

"WHEREFORE, plaintiffs pray for an order of this court directing the immediate payment by the defendants to the clerk of this court of the value of the plaintiffs' shares of preferred stock of Acme-Goodrich, Inc., as assessed by the court-appointed appraisers in their aforesaid appraisal report in the total amount of $331,230.88."

It is from the action of respondent court in sustaining the above petition that this action stems.

Relators contend that no judgment was rendered on the appraisal report filed April 8, 1960, since exceptions were filed to such report by both parties, and that the court had no authority to enter any order requiring the payment of the assessed or appraised value to the clerk of the court or to anyone else until sixty days after the entry of the judgment finding such appraised value.

The respondents urge that as the respondent court "had the jurisdiction and power to determine to what extent eminent domain practice and procedure could be practicably applied . . . ", the correctness of that decision is not here in issue.

This opinion could be extended indefinitely, but in view of the oft stated position of this court that resort to original actions will not lie when there is another remedy available, we need not so extend this opinion. *State ex rel. Mock* v. *Warrick Circuit Court* (1962), 243 Ind. 110, 183 N. E. 2d 202; *State ex rel. Steers, etc.* v. *Hancock Cir. Court, etc.* (1953), 232 Ind. 384, 389, 112 N. E. 2d 855.

It appears that the court in sustaining the petition to require the defendant (relator) to deposit the appraised value of the stock with the clerk of the court was exercising its judicial discretion and in so doing may have committed error, but the remedy is by appeal and not by way of original action.

The writ heretofore issued is dissolved and the permanent writ denied.

Landis, C. J., Achor, J., concur. Arterburn and Myers, JJ., concur in result.

NOTE.—Reported in 196 N. E. 2d 77.